You're still there. We wish we could see you. Taking it all in. S.E.C. v. Team Resources Incorporated All right. We'll hear first from Attorney DeRozier. I'm very close, Your Honor. That's the French pronunciation. We say DeRozier. DeRozier, anytime you're ready. That's how my ancestors would have pronounced it. Good morning. May it please the Court. Philip DeRozier, appearing on behalf of the defendants' appellants, Team Resources Incorporated, Fossil Energy Corporation, and Kevin Boyles. As discussed in the briefs, as you know, there are two issues in this case. The first is whether the district court was authorized to award a disgorgement penalty. The second is whether the court should have, in any event, held a hearing as to the proper amount of disgorgement. There's another French name, De Maison. De Maison. You didn't have a chance to file a 28-J response, or did you and I missed it? You know, Your Honor, I read the case, and I didn't have anything to say in writing about it. But I am happy to address it. But isn't sort of the simple and crux hard question, why wouldn't we follow exactly that blueprint? Well, I think the — I think that the answer to that is that it's necessary to really look at Kokesh, look at the traditional underpinning for SEC disgorgement, and to ask yourself whether — because I don't think that De Maison really looked at it. I don't think any court has yet. But didn't they just say when the Supreme Court explicitly carves out the question of authority, then that doesn't become a Supreme Court pronouncement that circuit law is wrong. So that panel in the Second Circuit said, we have precedent, we're bound, you can go en banc, and our precedent, like Blatt, would mean we're bound, you could go en banc. Scholars may be pointing out what you articulated, which is the logic of Kokesh, the implications of it, should mean you win. But we may not have that freedom. Do you agree or disagree? Well, I disagree in this sense. I would respectfully contend that the footnote three in Kokesh, number one, and that's what all the courts rely on in terms of saying that the Supreme Court didn't specifically address this authority question that I'm talking about in this case and that has arisen in other cases. The Supreme Court's footnote, in my view, is — the court wouldn't have put the footnote in its opinion were it not on the court's mind that this is a serious issue about whether there is a question. Now, I acknowledge that the question wasn't addressed in that case, but what was addressed is what's critical, and that is that the historical underpinning that SEC disgorgement is equitable and that it's a remedy that falls within the court's equitable discretion and jurisdiction, that's no longer the case. It's a penalty. And I acknowledge that in Kokesh, the court talked about penalty in the context of statute of limitations, but I would submit that there is no reason to basis for calling a penalty as a penalty. If it's a penalty, then the question arises, and that's what the court said. So, therefore, that is what I think upsets all of this Court's prior precedence in what I think — precedent from this Court saying that the SEC has the authority to order disgorgement. I agree with that. So that puts us — we're just a panel. That puts us in a difficult position, don't you think, or an impossible position, one might say, that we can't read tea leaves from the Supreme Court and use that as authority to overrule our own precedent. I'm not — I don't think we have the authority to do that, do we? No, but I do think there is a sufficient basis in Kokesh for the court to revisit its prior precedent. What do our cases say about one panel not following another panel, a prior panel, and what justification would allow that? It's whether the Supreme Court has made a pronouncement that is sufficiently concrete that would serve to provide a basis for this panel to revisit the prior precedent. I mean, I think that's basically correct. And the problem is, is that Kokesh affirmatively doesn't do that. No? Except that it's the — but again, the key is it's the penalty. When all of the prior cases say that disgorgement is equitable in nature and the Supreme Court has said no, when the SEC seeks disgorgement in these civil enforcement actions, it in fact is seeking and obtaining a penalty. And the Court talked about all the harm marks for why that's so. The SEC is remedying a public wrong. It's punishing wrongdoers. It's not — the point is not to compensate victims. It's not to even disgorge illegal profits. It's to punish the wrongdoer. And so I think that everything the Court had to say about that in Kokesh, in my view, and I understand the difficulty in making the argument to go back and revisit precedent. Was the point you're making briefed during — in Kokesh to the Supreme Court or discussed during oral argument at the Court? I — Or the ramifications of a rule finding that disgorgement is a penalty? All I'm aware of that came up in Kokesh was that at oral argument, there were questions that the justices — and I don't have — I didn't submit those to this Court, of course. Well, they're — But my understanding from my own study of Kokesh is that there were questions that several justices asked that led to pretty clear questions in their mind about whether disgorgement as a penalty is authorized. The problem was, is it wasn't specifically briefed and raised in Kokesh. It wasn't — it wasn't presented to the Court for decision. And so naturally, as the Supreme Court has wanted to do, didn't go there. But did leave that very important footnote about don't read our opinion as suggesting that the way this is being done is correct. Kokesh, the enforcement action occurred in 2015, right? It did. And then there was the consent — that's sort of two years before certs granted in Kokesh. But I noticed you reserved the statute of limitations. Was that because you anticipated it? No, I think that the statute of limitations issue here — I was not trial counsel, but my — But am I right that the consent language reserved the statute of limitations? It — no, the consent did not reserve the statute of limitations issue. Ah. The statute of limitations issue — I apologize, Your Honor. I misunderstood. The statute of limitations issue came up in our case when it became apparent that Kokesh was — was pending and was going to be decided. And so when the first motion for remedies was filed, that's why we responded to that, Court, that Kokesh is — is pending, is going to be decided, so let's — And the court held it in abeyance. And the court held on. Ultimately, the amount owed is cut almost in half. The amount owed was cut pursuant to the statute of limitations. But the logic of your new argument going further into Kokesh would be it's down to zero. It's — it would be that it's now down to zero. But that is an argument that we made in response to the SEC's second motion for remedies, was to point out that once Kokesh came out and once Kokesh held that SEC discouragement is, in fact, a penalty, that that did undermine and — and remove all of the traditional historical bases for SEC discouragement, and that that rendered, in our view, the — the district court without authority under the securities laws to impose what the SEC — The court, like the Second Circuit in De Maison, are there any circuits that are looking at this en banc? Do you know of any? Because — I — I am aware — I'm not aware of any that are looking at it en banc, but what I am aware is that the Ninth Circuit's decision in a case called SEC v. Liu, it was decided in 2018, 754 Federal Appendix 505. There's a cert petition pending. Now, you know, I understand pending only means so much. Although the Supreme Court did request a response from the SEC, that response is due tomorrow. So, you know, what to sort of make of that? I guess I would suggest that — What's it called, SEC v. Liu? Liu. Liu. So we expect that the SEC — well, we'll hear from them shortly, but prop one expects or hopes their position is consistent with the one they're taking here, but maybe not. I would expect — but I think what it does also show — and again, I understand, Judge Duncan, your perspective about reading tea leaves, but I do think there are all of these indicators that this is an issue that the Supreme Court is concerned about. You know, it didn't have to request a response. It doesn't mean it's going to grant cert. It could very well deny. But certainly there's some thoughtful consideration that the Supreme Court is putting into it based on the Ninth Circuit decision. Yeah. I don't think — I mean, believe me, I don't think this is a frivolous issue at all. I'm asking about our authority as a panel based on the Supreme Court sort of teasingly not reaching an issue. I fully accept that it's on the justices' mind. I can imagine them sitting there thinking what are the ramifications in other areas for finding that this disgorgement is a penalty for statute of limitations purposes, but then deciding not to go there. And I'm just asking myself and you, you know, what our authority is. Is that enough? I guess I would just ultimately sum it up by pointing to two things, the footnote, but then also more importantly, like I said, the broad pronouncement and discussion about the nature of an SEC disgorgement. Do you agree it would be a dramatic change in the law to recognize — It would be. That's a big deal. It would be a big deal. It absolutely is. Yeah. I absolutely agree with you there. Did you cite any — I assume it's scholars that are the ones saying the logic of Kokesh makes it imperative that it reach other areas. Right. Did you cite the scholarship you think is the most perceptive? So the — there was an article that came out, and I — the author is Bainbridge.  We didn't cite that one. It came out — I can't — at least I wasn't made aware of it until after the briefing. We do attach, of course, and reference both in the district court and in our brief, there was an article by a former head of the SEC Enforcement Division, I believe it was his role. He wrote a piece talking about Kokesh and the implications of Kokesh. So there certainly is this — the scholarly discussion. Well, you have two other arguments you probably want to get to, but one of them is they say you waived this issue. Your response is, no, you didn't preserve that below, but also since it goes to district court authority, it can't be waived? Is that the simple answer? Yeah. Well, first I would say that yes to the second point, but also to the first point. When we — when my clients agreed to consent to disgorgement, it was disgorgement as understood pre-Kokesh. There was no way to know at the time that Kokesh was going to come out and throw — and again, in our view, throw this all into a state of upheaval. So I would take the position that we didn't, in fact, consent to the SEC disgorgement penalty that we believe Kokesh has now said is not authorized. On the next important issue for you, my question is the case that I'll mispronounce, Kalon. Kalon, yes. It looks to me that that's, again, binding on us that an SEC violator can't offset with expenses. If that's binding authority, what discovery would you have gotten that would have been relevant? Your Honor, my response to the Kalon case, which, of course, is an obstacle, is that it was, again, it was decided pre-Kokesh. But not only that, Kalon also — I think it's important — Kalon cited and referenced the Blatt decision. And all of these cases from this Court have recognized, and I think Kalon as well, and I think the problem is, is that the Court has never directly wrestled with what legitimate business expenses are capable of being deducted when it comes to an SEC disgorgement request. And so — but what we do know is that cases like Blatt talk about how the — even under this Court's precedence, the amount is by which the defendant profited. There's also the Halick case, which is cited at page 31 of our brief, talks about how it's a reasonable approximation of profits. So there are these indicators in this Court's precedence that the focus, penalty or not, regardless of the application of Kokesh, you have to look at the extent to which the defendants profited. And there isn't any case from this Court that actually examined, in the context of the facts that we have here, where we have, as admitted in the SEC's own complaint, there were these expenses that are referenced right in the complaint that related to these oil and gas wells. But wouldn't you have had those yourself? Those are your expenses. It goes to the — Your Honor, the point I want to focus on is it goes to the hearing, because what we specifically negotiated with respect to these consents was the opportunity for a hearing. And then in responding to the remedies motion, the amended one, the position was, well, look, we don't think that any of this is permissible under Kokesh, but, Your Honor, assuming — Judge Godbee, assuming you disagree, then, you know, we want the opportunity at the hearing that we reserved in the consents to present evidence with respect to these legitimate expenses. So I think it's less about the discovery and it's more about the hearing that we reserved as part of the consent, and that I think when you have a motion for imposing a remedy of this sort, we cited the Smith case out of the Eleventh Circuit in our — Roberts. I think their response to both Smith and the argument you're making will be that you never formally asked for a hearing, one, and, two, in the language at the outset that you agreed to, it was at the discretion of the district court. Yeah, Your Honor, I would agree that there is some discretion in terms of generally when a hearing is required when it comes to this sort of a determination. But, again, this was part of the consent that was specifically reserved. And it wasn't — it wasn't so much — I don't think the hearing reference specifically was discretion, although I acknowledge that the consents could have been maybe a little bit more clear on this point. But more importantly, it's where you have amounts that are this significant. You had — the amounts were supported by essentially a spreadsheet, and there were — there was not any taking into account of any of these expenses. And although we didn't file a formal motion for a hearing, the request for a hearing was made a number of times in response. But the spreadsheet's just every dime an investor gave you. Everything that came in. You don't dispute that. We don't. We did not dispute in the district court the — the — the pure mathematical computation of the amounts that came in. It's more about these — What your expenses were. Were they legitimate? Yeah. And — and I would submit that none of the cases that the SEC cited involved the kind of legitimate expenses that we're talking about. The only one that I was able to find that comes close, and it's — I acknowledge it's an unpublished district court opinion, but we did cite it in the brief. It's the Griffin case from 2019. And it's — it was a situation where the kinds of expenditures that I'm talking about that go to the cost of setting up oil and gas wells that, you know, as here, we didn't dispute the allegations. They weren't — You cited Griffin. And you have rebuttal time. Thank you, Your Honor. Excellent. Thank you. Staroselsky? Did I get it? That's correct, Your Honor. Thank you. May it please the Court, Daniel Staroselsky for the Securities and Exchange Commission. Is the SEC filing? SGG filing tomorrow? Do you know? The SG represents the commission. Do you — do you happen to know? Do we get a little private insight, or you'd rather not comment on that? You know, I don't think that would be appropriate for me. Okay. So the SEC's position here to us is we lack authority, whatever Kokesh's implications might be? Or is that a simplified version of your argument? That we can't deviate from our precedent. I mean, that's certainly part of it. The Court is bound by its precedent, and the Court — Judge Duncan, you referred to the Court's standard for finding intervening change in the law to require departure. You need an unequivocal change. It's not enough that the panel thinks that the prior decisions are flawed. It's not enough that the Court thinks that there might be a hint that change is coming. You really need unequivocal change. And I think for all the reasons that the Court talked about during my friend's argument, Kokesh cannot provide that unequivocal change. But I do want to give the Court — I do want to try to give the Court some comfort that, you know, even if this were before the Court on a blank slate, which it's not, of course, but even if it were, the disgorgement is appropriate. And I think, really, the key to this is whether disgorgement is appropriate as a remedy is simply a question of statutory construction. And it's resolved here because Congress has expressly referred to disgorgement in judicial actions. Time and time again, we talk about those statutes at pages 24 and 32 of our brief, but I think it might be helpful if I just ran the Court through a couple of those. And I cannot emphasize enough, the absolutely critical provision here is in the Sarbanes-Oxley Act of 2002. Sarbanes-Oxley codified court's authority to award equitable relief in SEC actions. We know that Congress understood with that term to mean that disgorgement is authorized. We know this for two reasons. Number one, when Congress enacted this provision, it was doing it against the backdrop of a settled and mature body of precedent in the circuit courts. Holding that disgorgement is an equitable remedy, and it's a very well-settled principle of construction that Congress has understood to incorporate that term. Second, to the extent that you had any doubt about that, it's removed by other provisions in the Sarbanes-Oxley Act that expressly refer to disgorgement. So let me get — let me point you to a couple of those. Number one, this is now codified at 15 U.S.C. 7246. Congress said, if in any judicial or administrative action brought by the commission under the securities laws — and I'll skip over some things — if in those actions the commission obtains a civil penalty, the penalty amount shall be added to and become part of a disgorgement fund. Second, Congress amended the bankruptcy provisions to provide that a debt that results from — and pardon me, this is in 11 U.S.C. 523A19. And Congress said that a debt that results from any court or administrative order for any — and then it cites penalty, restitutionary payment, and expressly disgorgement payment shall not be discharged in bankruptcy. So the clear implication of that is Congress understands that disgorgement is available. And I could kind of go on and on with these provisions, but I don't want to test the  I do want to — Sotomayor, I thought their response in part was, Kokesh has changed the playing field, and in fact, Congress now has bills pending to give the authority back. So the negative inference from that is Congress knows it doesn't exist at the moment. You know, I think the courts traditionally are pretty reluctant to draw meaning from unenacted statutes. But to respond to Your Honor's point about Kokesh changing the meaning of it, I don't think it did whatsoever. And the reason is, when Congress refers to equitable relief in 2002, it's not really referring to an evolving body of case law. It's not, you know, for instance, like the antitrust laws, which say, look, unreasonable restraints of trade are prohibited, and then gives courts the authority to figure out what that means. At the time, Congress understood very well that disgorgement was available. And I think just to pull back here, the reason all of these enactments are meaningful is not only that they show that Congress understands the remedy exists, but I think it addresses the core concern that the Supreme Court has talked about in its modern equities jurisprudence, which is that courts have to police the line between what is properly equitable on the one hand and legal on the other. And the reason for that is you don't want courts simply invoking the term equity to award relief that maybe Congress has not provided for, maybe Congress has expressly chosen to limit. And on that point, this Court can have absolute comfort that nothing of the sort is going on. Congress is aware of disgorgement. We report to Congress with respect to the amounts of disgorgement we obtain and distribute and collect. Otherwise, Congress has blessed disgorgement. Congress has enacted multiple provisions that logically presuppose the existence of the remedy. And the other side would ask this Court to simply render all of those provisions meaningless, superfluous, and that cannot be. Every principle of statutory construction in the book says you have to give those provisions effect. The only potential way to treat all those statutes as an inkblot, essentially, would be if they violated some constitutional command. But nobody thinks that disgorgement is unconstitutional. The question is, are courts simply, you know, using the term equitable to get around what Congress has done? Alito, did the Second Circuit in the recent decision that you sent to us, did it venture into this larger structure of earlier statutory authority to conclude the issue, or did it just say footnote 3 means we're going to stay out? The Second Circuit just referred to footnote 3. The Second Circuit, I should say, in prior decisions has talked about the structure, the Palmazano case, which we cite in our brief here. But I just — and my reason — I mean, I do look — I do think that footnote 3 is sufficient, but I'm just trying to give the Court comfort that even if you were to approach this issue afresh, the case for disgorgement in SEC proceedings has, if anything, become much stronger since Blatt, because we're no longer relying on kind of just inherent authority. Congress has blessed the remedy. And I do — Your central point is that the Supreme Court is telling courts be cautious using this hammer of equity. And we have Kokesh. Then wouldn't we want a much more searching inquiry into the exact dollar amounts — this is getting to their point — no discovery, no hearing, and possibly legitimate expenses? I think both before and after Kokesh, courts should have been and were careful in holding the SEC to its burden. We have to show a causal connection between the violations and the fraud. We have to show a reasonable approximation. We — there's no double counting. There's no profits on profits. So if the defendants here took the stolen money and invested it in Amazon and made it — And I see all that you did was deduct payments that had already been made. You didn't consider — We deducted payments to — Any offsets that might have been. And so is your theory that they stipulated to an entirely fraudulent scheme, or is your theory that our law says offsets can't exist, or is it both? No, no. In an appropriate case, offsets can exist. And I think the Smith case that the Court was referring to is one potential illustration of that. That was an insider trading case. And the question — and that's pre-Kokesh, right? But the Court is holding the commission to its burden appropriately. And it's saying, look, you know, there's just too much of a dispute here about the cost of the options. You should go work that out. But in this case, what they stipulated to was an entirely fraudulent enterprise. They lured in Main Street investors with the representation that you should invest in this scheme to dig oil wells. But the defendants — So there's no revenue generated by these oil wells at all, ever? It was all bogus? It's all bogus. I mean — Well, I ask a compound question. Is there revenue? Was there any revenue obtained from any of the oil platforms? I mean, I'm not aware of any revenue obtained. The — of course, as the Court was referring to, we did deduct the amounts that went back to investors. But — I'm not — maybe I'm not being clear. I would — it is a cautious and restrained view that you're telling me now. I might have thought that our Kahlon decision was binding, that offsets can't occur for securities violators. But you're telling me, no, Smythe is the law, offsets could occur if the whole scheme weren't fraudulent. I think cases like Kahlon, and I think the law is well stated in the Ninth Circuit's decision in J.T. Wallenbrock, which we cite in the brief. J.T. what? Wallenbrock, W-A-L-L-E-N-B-R-O-C-K. Okay, great. And I think that's the case that this Court has looked to in decisions like Kahlon and — and I'm sorry, I'm blanking on the other ones. But it is more of a nuanced judgment. You look to whether the scheme was entirely fraudulent or not. And here — here it was. And with respect to the Court's question about discovery, well, discovery is a lawyer-driven process in civil litigation. And the defendants, they were authorized to take discovery. They just made a tactical decision not to. They were represented in the district court by very experienced SEC counsel. He worked in the Division of Enforcement. So everybody understands the way that these consent agreements work. They chose not to do anything about it, and I don't think it's proper to essentially sandbag the district court to say, look, we were prepared to — to go receipt by receipt and then not actually have provided any of that information to the court. Are we reviewing the district court's decision on this point for abuse of discretion? Yes, Your Honor. Yes, that's absolutely correct. Great. Counsel? Well, if I — I just — if I could leave the Court with just one final thought, and I think it goes to Judge Duncan's point about would this be a radical change in the law if the Court were to take away disgorgement? And I think on that point, not only would it be a radical change in the law, but I think it's appropriate for the Court to consider the real-world consequences of that determination. Disgorgement is used in cases ranging from Ponzi cases to major accounting frauds. This case where the defendants persuaded Main Street investors to invest their retirement savings in this obvious fraud. And if you take away disgorgement, what you're going to do is you're going to incentivize fraud further, and that will make it harder — that will undermine investor confidence in the securities markets, and it's going to make it harder for honest companies to raise the capital that they need to operate and to innovate. And unless the Court has any further questions, we ask the Court to affirm. Thank you, counsel. Thank you. Thank you. Thank you, Your Honors. Counsel, what's your response to the government's point that whereas offsets may sometimes be considered, not in this case, because what we have here is an entirely fraudulent scheme? My response to that would be that the SEC's own complaint demonstrates that the investments that they made shows that that's not the case. The SEC's complaint acknowledges that there were investors that received payments in response to their investments. The allegations were that the securities weren't registered. There were misleading statements made about expectations. There were misstatements made about what was going on with respect to the wells. But these were all wells that were, as the SEC's own allegations show, were in fact acquired, set up, drilled, geologists were hired, surveys were hired. Some of the investors did get some money back, not, of course, to their expectations, as alleged. But that is what makes, I think, this case different than any other case, including the J.T. Wallenbrock case that the SEC has placed so much emphasis on. And we discussed that case in detail both in our principle brief as well as in our reply brief. So I would take issue with the characterization based on the SEC's own complaint of the nature of these investments. It may well be, as alleged, that these investments were ill-advised, that there were misrepresentations made about expectations, and that the investors were led to think that things were otherwise. But they were real investments, and there were real expenses associated. This wasn't some, you know, the typical case, right, is the Ponzi scheme. It's where money is taken in, and it's used to fund other businesses. It's used to fund discretionary expenses. That's not what we're talking about here. We're talking about expenses that the investors would have expected their money was going to be used to pay for, which was getting these wells up and running. If I could go back for just a moment and talk about the reference to the various statutory provisions where Congress uses the term disgorgement. Of course, again, the historical understanding, which I think, you know, under this notion of when Congress enacts statutes that, you know, post-state case law, it assumes that it takes the case law into effect. Well, the case law has always been that you have disgorgement is equitable in nature. And so we discussed that in our reply brief. So I think that's the essential answer to the reference to all these statutory provisions is it's talking about a kind of disgorgement that was not – it was understood differently pre-Kokesh. I think the best evidence of what the statutory provisions allow is when you look at the remedies that are provided under the securities laws. So the remedies are – you know, there are three of them. You have injunctive relief is available. We know that. That's Section 20 of the Securities Act, Section 21 of the Exchange Act. You have civil monetary penalties. So Congress already authorizes a penalty. And then you have equitable relief that is appropriate or necessary for the benefit of investors. That was a provision that was added later. So when you look at these remedies that are set forth in the securities laws, none of those remedies even come close to encompassing the sort of disgorgement penalty that we're talking about here, and that in this case, not only did it not take into account any  authority in the statute that Congress did authorize. And so I think that the proper focus isn't sort of trying to determine what Congress may have been thinking by these references to disgorgement, which I think are consistent with the historical understanding. The point after Kokesh is where in the securities laws is there authority to seek anything other than the civil monetary penalty that is expressly provided for? There's nothing in there that allows for a disgorgement penalty, which is what the SEC typically seeks and what certainly it sought and obtained here. And so if the Court doesn't have any other questions, I appreciate your time and consideration. Thank you both.